IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | DOCKET NO. 5:25-cr-00049-KDB-DCK |
| VS. | ) ) | GOVERNMENT'S MOTION FOR FILTER PROTOCOL |
| SCOTT DAVID MASON | ) ) ) |  |

The United States of America files this motion for a Court order implementing a filter protocol to review 12 electronic devices seized from the Defendant. This case involves distribution and possession of child pornography, as defined in Title 18, United States Code, Section 2256(8) and referred to in this motion as child sexual abuse material ("CSAM"). Although the Defendant is not a lawyer, he claims attorney client privilege and work product protection over all the devices because he worked as a Senior Policy Advisor for an international law firm at the time of the offense conduct. Upon seizing the devices, the government conferred with the Defendant's attorneys regarding the search of the devices and proposed a filter protocol that involved a limited, targeted search and the use of a filter forensic analyst, forensic agent, and filter government attorney. The Defendant insists, however, on using a special master to conduct the review. For the reasons explained below, the government's proposed filter team is appropriate for this case, and the use of a special master is not necessary.

I. **Procedural Background**

On October 22, 2025, a Grand Jury in Charlotte, North Carolina, indicted Defendant on one count of distribution of CSAM, in violation of 18 U.S.C. § 2252A (Count 1) and one count of possession and access with intent to view CSAM, in violation of 18 U.S.C. § 2252A(a)(5)(B)

(Count 2). Doc. No. 3.

On October 27, 2025, Mason pleaded not guilty at an initial appearance and arraignment. Trial is currently set for the trial period beginning on January 5, 2026.

## II. Factual Background

### a. Mason Distributed and Possessed CSAM using Kik

On May 2, 2025, MediaLab.AI Inc. ("MediaLab"), which is a holding company that owns Kik Messenger ("Kik"), submitted a CyberTip Report to the National Center for Missing and Exploited Children ("NCMEC"). In the report, MediaLab identified "1Ranger1872" as an account that uploaded 3 files of suspected CSAM to 1Ranger1872's account on Kik. Information from Kik further revealed that 1Ranger1872 and a second account, 2Ranger1872, were both registered to ranger1818@yahoo.com. Subscriber information from Yahoo revealed that ranger1818@yahoo.com was registered to Scott Mason.

On July 1, 2025, law enforcement obtained a federal search warrant for Kik accounts 1Ranger1872 and 2ranger1872. *See* 3:25-mj-00173-SCR (WDNC Jul. 1, 2025). A review of the records for the 1Ranger1872 and 2ranger1872 accounts revealed that between March 28, 2025, and May 1, 2025, Mason distributed approximately 15 files (10 videos and 5 images) of CSAM. Mason distributed one of those videos approximately 15 times. He distributed a second video approximately 14 times. The other files he distributed either twice or once. In total, Mason distributed CSAM approximately 50 times between March 28, 2025, and May 1, 2025.

Law enforcement identified 5 victims (referred to as MV1 – MV5) depicted in the 15 media files. Additionally, NCMEC identified a 6th victim (MV6) from the Flower Lights series.

On April 24 and 25, 2025, Mason, using the 1Ranger1872 account, distributed twice an image that depicts MV1 – MV4 standing together and nude in front of a staircase in what

appears to be a home. Artificial intelligence ("AI") was used to nudify this image.[1] The original, unmodified picture was not distributed from the 1Ranger1872 account. Law enforcement has interviewed MV1-MV4, and they each identified themselves and confirmed that they are minors at the time of the interview and as depicted in the image. One of the victims explained that she thought the manipulated photo was taken of her and her friends for a school dance. She further explained that the original, clothed photo may have been posted on social media. None of the girls recognized Mason's name. Kik records show that the IP address used to distribute this photo twice is 65.191.103.90. Records from Charter Communications, Inc., show that during the time of distribution, the IP address was subscribed to Scott Mason at his residence in Mooresville, North Carolina.

On March 28, 30, 31 2025 and April 1, 2, 3, 4, 7, 10, 15, 16, 2025, Mason, using the 1Ranger1872 account, distributed approximately 15 times an AI generated video of MV1 walking, fully dressed, and wearing cowboy boots. A cloud of smoke suddenly appears over her

---

[1] Visual depictions of minor children that have been modified using artificial intelligence qualify as child pornography. *See* 18 U.S.C. § 2256(8)(C) (defining "child pornography" to "mean[] any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . (C)such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 241 (2002) ("Section 2256(8)(C) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*. Respondents do not challenge this provision, and we do not consider it."); *United States v. Hotaling*, 634 F.3d 725, 729–30 (2d Cir. 2011) ("the interests of actual minors are implicated when their faces are used in creating morphed images that make it appear that they are performing sexually explicit acts. In this case, even though the bodies in the images belonged to adult females, they had been digitally altered such that the only recognizable persons were the minors."); *United States v. Mecham*, 950 F.3d 257, 267 (5th Cir. 2020) ("We conclude that because morphed child pornography depicts an identifiable child, it falls outside the First Amendment.").

clothes, then disappears to reveal MV1 dancing and naked (depicting breasts and vagina) except for her boots. The nudification appears to have been done using AI. The original image was not distributed from the 1Ranger1872 account. Eight of the distributions, including March 28 and April 16, were from IP address 65.191.103.90, which was subscribed to Mason at his residence at the time of the distributions. Mason further distributed approximately 27 images of MV1, some clothed some not, all likely taken from social media accounts, that were cropped and distributed from the 1Ranger1872 account.

On March 21, 25, 27, 28, 30, 31 2025 and April 2, 4, 7, 12, 14, and 16, 2025, Mason, using the 1Ranger1872 account, distributed approximately 15 times an AI generated video of MV1 and MV5 standing next to each other, fully nude with their vaginas displayed. In the video, the girls turn to each other, press their breasts together, and kiss. Nine of these distributions (including March 21 and April 16) were made from IP address 65.191.103.90, which was subscribed to Mason at his residence during the times of the distributions. Mason also distributed a still image of this video on April 24 and 25, 2025, from the same IP address (65.191.103.90). The original, clothed version of MV1 was distributed by the 1Ranger1872 account, but the original of MV5 was not.

In the video described in the preceding paragraph, a watermark depicting the phrase, "PIXVERSE.AI," can be seen in the top right of the video. Pixverse.ai is a generative AI website that allows users to create AI media from text prompts, images to videos, and other effects. The startup behind pixverse is Alsphere, a company based in Beijing, China.

On April 12 and 16, 2025, Mason, using the 1Ranger1872 account, distributed an AI generated nude image of MV5 standing in front of a fireplace. MV5's breasts and vagina are visible. One of the distributions was from IP address 65.191.103.90, which was subscribed to

4

Mason at his residence during the time of the distribution. The original of this photo was not distributed from the 1Ranger1872 account.

In addition to the distributions above, Mason, using the 1Ranger1872 account, distributed other images and videos of CSAM that were non-AI modified. For example, on April 23, 2025, Mason distributed twice a video depicting a minor female appearing to be between 13-15 years old. She is wearing a black shirt and performing oral sex on an unidentified male. During the sex act, the male ejaculated into her mouth.

In addition to the material described above, 1Ranger1872 and 2ranger1872 also distributed media depicting child erotica. For example, Mason, using the 1Ranger1872 account, distributed media of minors exposing only their breasts. Other media depicts minors in minimal clothing while posing suggestively towards the camera. Mason also distributed age-difficult sexually explicit media and adult pornography.

Many messages reveal Mason's stated sexual interest in teenage children. For example, on April 26, 2025, a user asked, "What age range do you like?" and Mason responded, "13+" On August 28, 2025, Mason said to a Kik user, "Ur only 13? Even better." That same day, he also said, "I love 14 year olds," to another Kik user. On August 26, 2025, he said, "Teen girls make me so hard" and "Show me ur teen pussy."

### b. Identification of MASON as the User of 1Ranger1872 and 2ranger1872

The evidence shows that Mason is the user of 1Ranger1872 and 2ranger1872. As noted above, Mason is the subscriber to ranger1818@yahoo.com, which is the email account tied to 1Ranger1872 and 2Ranger1872. He is also the subscriber to the IP address associated with many of the distributions, as described above.

Additionally, the content for 1Ranger1872 includes several videos and images of Mason's face. In the videos, he is looking at the camera and stating the date. This is a common form of establishing "proof of life," wherein the person depicted in the video shows their face while saying the date to convince the other user that he is real and not law enforcement. In the numerous videos, Mason looks at the camera and says the date. He is the only male depicted in the content distributed from the 1Ranger1872 account.

The content for the 1Ranger1872 account also includes a file named, c3c1d617-0515-49da-ab1e-e73633826340, that 1Ranger1872 distributed to another user. The video that depicts Mason's crotch area while masturbating and saying, "Oh Zoe, oh god, I'm in love with your 16-year-old daughter." The man's face is not visible, but his voice can be heard, and the voice sounds the same as the proof of life videos where Mason's face is visible. A review of the chats between 1Ranger1872 and the person Mason sent this video to shows that Mason and the other person each purported to have a teenaged daughter. Law enforcement intelligence suggests that Mason does not actually have a daughter. 1Ranger1872 sent this video to youdoyou2025_ypf at 04:00:36 during the following exchange:

| Sender | Receiver | Chat | Timestamp |
|---|---|---|---|
| [Redacted] | 1ranger1872_aa5 | Donâ€™t stop . I want you tell me you are in love wirh my 16 year old daughter | 2025-03-21; 03:57:49 |
| [Redacted] | 1ranger1872_aa5 | While you stroke for full 30 seconds | 2025-03-21; 03:58:01 |
| [Redacted] | 1ranger1872_aa5 | If you are a good boy you get more nudes | 2025-03-21; 03:58:29 |
| 1ranger1872_aa5 | [Redacted] | Fucking her with her boots on | 2025-03-21; 03:59:01 |
| [Redacted] | 1ranger1872_aa5 | Donâ€™t stop . I want you tell me you are in love wirh my 16 year old daughter. Say it and then moan her name | 2025-03-21; 03:59:14 |

6

On June 13, 2025, an FBI Undercover Agent made contact with 2ranger187 (Kik had already shutdown 1Ranger1872 after reporting the Cybertip). Using 2ranger1872, Mason disclosed he gets to "perv" and "spy" on his purported 16 and 18-year-old daughters, but more so the 16-year-old one. 2ranger1872 expressed how amazing his daughter's body was when she was 13 years old. 2ranger1872 disclosed he rubbed her vagina while she sat on his lap a few years ago and told her it had to be a secret. 2ranger1872 said he was into teens. Mason does not have any female children.

Additionally, in a recorded interview, discussed below, Mason admitted to using Kik for sex-related conversations regarding minors.

### c. Mason Is a Senior Policy Advisor at an International Law Firm

Mason is not an attorney, but he is a Senior Policy Advisor who worked for an international law firm at the time of the criminal conduct. He worked on lobbying and government affairs consulting, focused on Capitol Hill, among other government agencies.

### d. Search Warrant At Mason's House

On July 14, 2025, FBI Agents executed a federal search warrant at Mason's home in Mooresville, North Carolina. *See* 3:25-mj-00184-WCM (WDNC Jul. 8, 2025). Mason had just left to a local exercise facility and was not home at the time of the search. Law enforcement seized the following electronic devices pursuant to the search warrant:

1. Vivitar digital camera (Item 1B2)
2. Maxtor hard drive (Item 1B3)
3. Toshiba hard drive (Item 1B4)
4. Lenovo laptop (Item 1B5)
5. Black Thinkpad (Item 1B6)
6. Black thumbdrive (Item 1B7)
7. Silver ASUS Chromebook laptop (Item 1B8)
8. Black Toshiba laptop (Item 1B9)
9. Gateway laptop (Item 1B10)
10. Lexar SIM card (Item 1B11)

11. Kodak memory card (Item 1B12)

According to Mason, the black Thinkpad, identified as item 1B6, is Mason's work laptop.

### e. Mason Interview

Continuing on July 14, 2025, law enforcement found Mason at the local exercise facility. The agents told Mason he was not under arrest and read him *Miranda* rights per FBI form. Mason waived verbally and in writing.

While Mason denied intentionally downloading or distributing CSAM, he admitted to using Kik for sexual-related conversations, which he called, "entertainment." He acknowledged that he engaged in sexually explicit conversations about minor females, which he claimed to be a fantasy and an outlet. He further acknowledged that he received CSAM "to continue the fantasy," although he claimed he "never solicited" the material. According to Mason, he did not use Kik for work.

Mason also agreed to provide agents his phone and its password. Law enforcement logged the phone in evidence as the twelfth seized device:

12. iPhone 15 (Item 1B13)

Law enforcement obtained a separate federal search warrant to search the iPhone. *See* 3:25-mj-190-SCR (WDNC Jul. 15, 2025).

### f. Search Warrant Protocol

The search warrants for devices found in Mason's home and the iPhone recovered from Mason have the same protocol language addressing potentially privileged or protected material. *See* 3:25-mj-00184-WCM (WDNC Jul. 8, 2025) (residential warrant); 3:25-mj-190-SCR (WDNC Jul. 15, 2025) (phone warrant). The protocol allows the government to review the contents of devices. In the process of the review, if the government encounters materials that

8

Case 5:25-cr-00049-KDB-DCK    Document 9    Filed 10/28/25    Page 8 of 16

reasonably appear on their face to be subject to attorney-client privilege or protected by the work product doctrine, the government is required to stop review of those materials and sequester the materials. The protocol goes on to describe the process for handling the potentially privileged materials. The protocol does not require the use of a filter team or require stopping review of non-potentially privileged materials in the device. *See id.*

### g. Filter Protocol

On July 15, 2025, the day after the search warrant at Mason's home, counsel for Mason contacted the United States Attorney's Office to inquire about the search of Mason's home and to exert attorney client privilege and work product protection over the contents of Mason's devices in law enforcement's possession. That same day, the government sent an email to defense counsel outlining a proposed filter protocol to review the devices. The government's proposed protocol would have allowed the forensic analyst to search only media and Kik communications in the iPhone (item 1B13) and targeted searches in the work laptop (not targeting any emails) (item 1B6). Additionally, on July 16, 2025, the government sent defense counsel a copy of the property list of the 11 devices seized from Mason's home and the iPhone seized from Mason, asking for the defense to identify which items may contain privileged information.

On July 25, 2025, the parties discussed the protocol and the evidence list. The defense objected to the protocol and insisted on using a special master to review the contents of the devices, citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), and offered to identify any items on the property list that would contain privilege. The government objected to the use of a special master and, instead, proposed a more robust filter review that would involve a filter forensic examiner, filter agent, and filter government attorney. This filter

9

team would be made up of individuals who are not on the trial team. The government's proposed protocol as described in an email on July 25, 2025, is quoted in full below:

1. Trial Team
    a. The trial team is made up of me [AUSA Daniel Cervantes], SA Jared Schaefer in the FBI field office in Hickory, and CFA Matt Rogers in the Hickory Police Department.
2. Filter Team
    a. A filter team is ready to begin work once the parties confirm agreement on this protocol.
    b. The filter team includes an FBI CART employee in Charlotte, an FBI agent in the Greensboro office, and an AUSA in the Asheville office.
3. Defense Team
    a. Missy Owen and Rob Heroy
4. Protocol
    a. The filter CART employee will image all devices (except for the phone, which was already imaged by Matt Rogers to preserve its contents before the phone entered BFU state)[2]
    b. The filter CART employee will process all devices using a review program (most likely Axiom)
    c. The filter Agent will perform searches throughout each device in an effort to create reports that can be provided to the trial team for their review and use
    d. At this time, the Trial team is requesting that the Filter Team generate reports for each device based on the following criteria:
        i. A search for all media
        ii. A search for all Kik-related material
        iii. A search for internet history usage
        iv. A search for user profiles and applications installed on the devices
    e. Filter Search Terms
        i. Prior to providing each of these reports to the Trial Team, the Filter Team will ensure that the reports are further filtered to exclude any attorney client and work product material.
        ii. To perform this further filter, the Filter Team will implement the following search terms, which must be agreed upon by the Trial Team and Defense Team:
            1. **[TBD]**
    f. Should the Trial Team want the Filter Team to run additional searches to generate additional reports, the Trial Team will inform the Defense Team

---

[2] For iPhones, it is important to extract the contents as soon as practical once law enforcement takes possession of the device because the device will enter a state, called "before first unlock" or "BFU," within approximately 48 hours where forensic tools will no longer be able to fully access the contents.

      so that the parties can determine whether any modifications to the Filter Search Terms are necessary.
  g. Notwithstanding the above protocol, should the Trial Team encounter any material that appears to be privileged, the Trial Team will stop all review to discuss with the Defense Team whether any modifications to the Filter Search Terms should be implemented.

The defense did not agree to this filter protocol. Additionally, to date, the defense has not identified any items on the property list that would not contain alleged privileged material, despite obvious items such as a "Vivitar digital camera (Item 1B2)."

Meanwhile, the government has been in communication with Mason's law firm. The law firm has represented that the government's proposed protocol, described above, is acceptable to them. At the time of this filing, however, the law firm has not confirmed whether any of Mason's communications would be subject to privilege or protection. As argued below, regardless of the firm's position, the government's proposed filter protocol is sufficient to address any potential privileged or protected material.

As of today, none of the devices have been forensically analyzed. Mason's cellphone, item 1B13, has been extracted but not reviewed to avoid the phone entering BFU state. This means that the contents of the iPhone have been extracted but not reviewed. None of the other devices have been extracted pursuant to the defense team's request and exertion of privilege and protection over the contents of the devices.

### III. Argument

This Court has the authority to issue an order detailing the appropriate process for reviewing the 11 devices seized from Mason's home and the iPhone seized from Mason (collectively, the "Devices"). *See* Fed. R. Crim. Pro. 16(d)(1) (regarding protective and modifying orders).

The government's proposed filter review protocol from July 15, 2025, which did not

implement a filter team, was appropriate and consistent with the protocol from the search warrants. The search warrant protocol allowed the trial team to search the devices, despite disclosing that Mason worked at a law firm. *See* 3:25-mj-00184-WCM (WDNC Jul. 8, 2025) (residential warrant); 3:25-mj-190-SCR (WDNC Jul. 15, 2025) (phone warrant). Accordingly, when the government proposed that the trial team forensic analyst would search for media and Kik communications in the iPhone (item 1B13) and specific searches in the work laptop (not targeting any emails) (item 1B6), that protocol was appropriate.

In an abundance of caution, after conferring with the defense on July 25, 2025, the government took defense counsel's assertions at face value and offered the use of a filter team. But even the use of a filter team is not necessary, given that Mason is not an attorney, he has not explained how any communications would be privileged or protected, and his law firm has not confirmed that he was part of any team that included attorney-client privileged communications or work product privilege. Simply working for a law firm and associating with attorneys does not confer privilege or protection over all communications. The government's July 25, 2025, protocol is targeted to specific areas and will be conducted by a filter team that does not involve any members of the trial team. Should the filter team come across any privileged or protected material, that information would not be provided to the trial team, absent a Court order or agreement by the defense.

Moreover, to state the obvious, the government is looking for contraband and evidence of distributing, receiving, transporting, or possessing and access with intent to view contraband. This is not a complicated search of documents generated by an attorney to commit and aid and abet a crime.

This case is a far cry from *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th

12

Case 5:25-cr-00049-KDB-DCK    Document 9    Filed 10/28/25    Page 12 of 16

Cir. 2019). In that case, federal agents and prosecutors searched a Baltimore law firm's offices because of suspicion of misconduct by a lawyer of that law firm who represented a client (also a lawyer) who "was suspected of assisting drug dealers in illicit activities, including money laundering and obstruction of federal investigations." 942 F.3d at 165. Moreover, in that case, investigators seized 52,000 emails from the lawyer, of which "only 116 [were] responsive" to the search because only that small number of emails contained the client's name that was the target of the investigation. *Id.* at 168. Therefore, 99.8% "of the 52,000 emails seized by the government were not from [the target of the investigation], were not sent to [the target], and did not mention [the target's] surname." *Id.* at 172. Furthermore, the thousands of non-responsive emails that the Filter Team did review "contained privileged information relating to other clients of [the Baltimore law firm], including clients who [were] potential subjects or targets of government investigations." *Id.*

The Fourth Circuit held that the use of a filter team in those circumstances was inappropriate and that the district court abused its discretion by failing to enjoin the filter team's review of the seized materials. *Id*. at 164. Specifically, the Fourth Circuit stated, "[i]n these circumstances, we are satisfied that the magistrate judge (or an appointed special master) – rather than the Filter Team – must perform the privilege review of the seized materials." *Id.* at 181. But as noted in Judge Rushing's concurring opinion, that case involved "unique facts and circumstances" not present here, including: (1) the Search Warrant in this case did not involve an attorney office or target an attorney's documents or communications; and (2) there appears to be little (if any) chance that any client communications will be reviewed by the Filter Team, much less the Trial Team. *Id.* at 183. *See, e.g.*, *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) ("In

challenging the filter team utilized here, Giuliani relies on *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019). Although the Fourth Circuit in that case held that the magistrate judge's authorization of the filter team and protocols were improper under the circumstances, it did not hold that the Government's use of a filter team is categorically inappropriate."); *In re Sealed Search Warrant & Application for a Warrant*, No. 20-MJ-03278, 2020 WL 5658721, at *5 (S.D. Fla. Sept. 23, 2020), *aff'd sub nom*; *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, No. 20-03278-MJ, 2020 WL 6689045 (S.D. Fla. Nov. 2, 2020) (distinguishing the Fourth Circuit's *In re Search Warrant* case, and others, explaining that "[t]he concern in those cases – that members of the filter team might have been involved in or could later become involved in the criminal investigation and or prosecution of other clients – is simply not present here.").

Here, in contrast, this investigation does not involve an attorney, an attorney's office, an attorney's email account, or review of attorney-client communications that could reveal additional targets. The government's proposed filter review is limited to media; Kik-related material, which Mason said he only used for personal reasons, not work; internet history usage; and user profiles and applications installed on the devices. With this protocol, there is little, if any, chance that privileged or protected material will be reviewed by the Filter Team, much less the Trial Team.

Accordingly, for the reasons explained above, the government's July 25, 2025, filter protocol should be implemented through a court order.

### IV. Conclusion

WHEREFORE, the United States respectfully requests that the Court enter an order implementing a filter protocol consistent with the government's July 25, 2025, proposal.

Respectfully submitted October 28, 2025.

**RUSS FERGUSON**
**UNITED STATES ATTORNEY**

 */s/ Daniel Cervantes*
Assistant United States Attorney
FL Bar Number: 40836
Attorney for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.338.3115
Fax: 704.227.0197
E-mail: daniel.cervantes@usdoj.gov

## **CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided. Certified on October 28, 2025.

                                              */s/ Daniel Cervantes*
                                              Assistant United States Attorney