# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Docket No. 5:25CR49

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SCOTT DAVID MASON | RESPONSE TO GOVERNMENT'S MOTION FOR FILTER PROTOCOL |

Now comes Defendant Scott Mason in response to the Government's Motion for Filter Protocol (Dkt. 9).

## Background

From 2017 through 2025, Defendant was a partner and Senior Policy Advisor at a major international law firm ("The Firm"). The Firm has more than 35 offices throughout the United States and elsewhere, and employs thousands of lawyers.

Although Defendant is not a lawyer, he worked closely with The Firm's legal teams to advance clients' interests. Accordingly, he regularly received, contributed to, and analyzed materials subject to attorney-client privilege and/or the work-product doctrine. Defendant also sought legal counsel on behalf of certain clients, serving as their representative and agent.

In connection with this case, law-enforcement officers seized twelve electronic devices from Defendant (including computers, a cell phone, and

various storage drives). The Government has not yet reviewed the contents of the devices, but desires to do so under a proposed "Filter Protocol."

For the reasons that follow, the Government's motion should be denied. Defendant respectfully requests that this Court instead appoint a special master to conduct an initial review of the devices at issue.

## **Argument**

Despite the government's assertions (*see* Dkt. 9 at 14), there is a significant likelihood that the devices at issue contain material covered by either attorney-client privilege or the work-product doctrine.

The attorney-client privilege is "founded upon the necessity" of candid communication, "free from the consequences or apprehension of disclosure." *In re Search Warrant*, 942 F.3d 159, 173 (4th Cir. 2019). And the work-product doctrine—which is "no less important"—recognizes that lawyers "must be able to work with a certain degree of privacy" in order to serve their clients and the legal system.[1] *Id.*

Defendant, his counsel, and The Firm have a duty to preserve those

---

[1] Together, the attorney-client privilege and work-product doctrine enable "attorneys to prepare cases without fear that their work product will be used against their clients," which, ultimately, "promote[s] the proper administration of justice." *In re: Chevron Corp.*, 633 F.3d 153, 164 (3rd Cir. 2011).

2

protections "to the maximum extent possible." *Id.* Because the proposed Filter Protocol risks breaching them, Defendant objects to its use.

## I. Attorney-client and work-product protections belong to clients, and this Court must protect them.

As an initial matter, whether or not Defendant is himself a lawyer is irrelevant to the adequacy of the Government's Protocol. (*See* Dkt. 9 at 14.)

The attorney-client privilege is held *by the client*, who may "prevent any other person from disclosing confidential communications between him and his attorney." *Search Warrant*, 942 F.3d at 173. Likewise, the "qualified privilege" arising from the work-product doctrine is "held by lawyer and client alike." *Id.* at 173-74.

As the Court knows, lawyers routinely rely on nonlawyers to gather information, digest and communicate their advice, and provide wholistic representation. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) (Kavanaugh, J.) ("[C]ommunications made by and to non-attorneys serving as agents . . . are routinely protected by the attorney-client privilege[.]"). Defendant wore those hats when he worked at The Firm. And as a result, he often received and reviewed materials within the ambit of attorney-client and work-product protections.

The Firm's clients—which include major corporations with sensitive and complex legal needs—assumed confidentiality with respect to those

materials. They would not have anticipated (or be amenable to) review of their communications and The Firm's work product by a United States Attorney's Office or the FBI. And they may refuse to disclose—and prevent others from disclosing—those materials. That is true irrespective of whether Defendant is a lawyer. *United States v. (Under Seal)*, 748 F.2d 871, 874 n.5 (4th Cir. 1984) (citing Supreme Court Standard 503(b)) (privilege applies to legal communications "between [a client] and his representative and his lawyer or his lawyer's representative").[2]

---

[2] As noted in *(Under Seal)*, 748 F.2d at n.5, Supreme Court Standard 503(b) provides:

(1) **General Rule.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:

 (A) between the client or the client's representative and the client's lawyer or the lawyer's representative;

 (B) between the client's lawyer and the lawyer's representative;

 (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

 (D) between the client's representatives or between the client and the client's representative; or

 (E) among lawyers and their representatives representing the same client.

(2) **Special Rule in a Criminal Case.** In a criminal case, a client has a privilege to prevent a lawyer or lawyer's representative from disclosing any

While at The Firm, Defendant worked closely with both clients and attorneys, as their agent, on both legal matters and mixed lobbying/legal matters. For example:

- Defendant worked with The Firm's lawyers to help clients navigate visa requirements.

- Defendant gathered information, at the direction of The Firm's lawyers and on behalf of The Firm's clients, and was routinely copied on privileged emails and media.

- And Defendant regularly worked on legal teams (on which he was the only non-lawyer) to develop hand-in-hand legal and lobbying strategies aimed at accomplishing clients' goals.

Defendant was also, at times, personally represented by attorneys within The Firm—including with respect to sensitive National Security Division issues involving the Foreign Agent Registration Act. Materials and communications related to that representation are likely to be present on the seized devices.

Finally, in employment prior to The Firm, Defendant worked for a national political campaign. During that engagement, Defendant worked with attorneys seeking advice on behalf of the campaign. Again, potentially privileged materials related to that engagement are likely on the devices.

---

other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.

5

## II. The Filter Protocol fails to protect privileged communications and work product.

The Government's proposed Filter Protocol provides that:

a. The "Filter Team" will be comprised of two North Carolina-based FBI agents and one AUSA from within the Western District.

b. A "Filter Team" will conduct an initial review of the devices in their entirety. (*See* Dkt. 9 at 10, items 4(b)-(c) (providing that "the filter CART employee will process all devices using a review program [and] [t]he filter Agent will perform searches throughout each device in an effort to create reports")).

c. In conducting their review, the "Filter Team" will assess *by themselves* whether any material found on the devices enjoy attorney-client or work-product protections.

d. The "Filter Team" will then generate "reports" for the "Trial Team" to "review and use"—including a report covering "all media" found on the devices.

e. Defendant may identify "search terms" for the "Filter Team" in an effort to "exclude" privileged material. But there is no other established avenue for input from Defendant, The Firm, clients, or this Court.

(*See* Dkt. 9 at 10.)

### A. The Filter Protocol improperly delegates a judicial function.

This Court should reject the Filter Protocol for several reasons. *Cf. In re Search Warrants*, 111 F.4th 316, 327 (4th Cir. 2024) (Quattlebaum, J. concurring) (urging "district courts to consider these issues before ordering [filter] protocols").

For starters, the Filter Protocol empowers executive-branch agents and prosecutors to make unilateral privilege determinations.

6

It is well recognized that determining whether material is privileged "is a judicial function." *Search Warrant*, 942 F.3d at 176-77. And "a court is not entitled to delegate [that function] to the executive branch, especially when the executive branch is an interested party in the pending dispute." *Id.* at 176 (cleaned up).

Here, the proposed Filter Protocol authorizes agents and prosecutors to "rummage through" the devices, then unilaterally decide for themselves what material is entitled to protection. *Id.* at 179. The Protocol affords no meaningful opportunity for Defendant, The Firm, or any other potential privilege holder to lodge an objection before materials are turned over— effectively leaving "the government's fox in charge of the henhouse." *Id.* (cleaned up).

The Fourth Circuit rejected a nearly identical protocol in *In re Search Warrant* as violative of the nondelegation principle. *See id.* at 165-66, 178. There, a filter team was given primary responsibility for "identify[ing] and separat[ing] privileged and potentially privileged materials from materials that were not privileged." *Id.* at 165-66. Materials that were not designated as "potentially privileged" were then handed over to prosecutors before any other party was afforded a chance to object. *Id.* That procedure, the Court held, "erroneously authorized the executive branch," rather than a judicial official, to make decisions on attorney-client privilege and the work-product

7

doctrine." *Id.* The same would be true here.

The problem with unilateral, executive-branch privilege determinations is that they fail to provide "any check . . . against the possibility that the government's [filter] team might make some false negative conclusions"—that is, that they would "find[ ] validly privileged [materials] to be otherwise" and pass them along to prosecutors. *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006). For that reason, Courts across the country require that potential privilege holders be given a first-look opportunity to review materials (and, if necessary, object) before they are made available to prosecutors. *See, e.g.*, *United States v. Korf*, 11 F.4th 1235, 1243 (11th Cir. 2021); *United States v. Vepuri*, 585 F. Supp. 3d 760, 764-65 (E.D. Pa. 2021); *United States v. Avenatti*, 559 F. Supp. 3d 274, 283-84 (S.D.N.Y. 2021). The proposed Filter Protocol provides none.

**B. The Filter Team's composition compounds the issue.**

The nondelegation problem is further exacerbated by the Filter Team's make-up.

The Filter Team is comprised mostly of law-enforcement officers that are not lawyers—an "FBI CART employee in Charlotte" and an "FBI agent in Greensboro." (Dkt. 9 at 10-11.) On its face, the Filter Protocol appears to allow these non-lawyers to designate materials as nonprivileged, then report them to the Trial Team without any further scrutiny or review. (*See id.*)

8

But as the Fourth Circuit has recognized, non-lawyer review further increases the risk that—whether by "mistake," "neglect," or "honest differences of opinion"—privileged materials will be misclassified. *Search Warrant*, 942 F.3d at 177-78 (citing *Grand Jury Subpoenas*, 454 F.3d at 523); *see also In re Search of Elec. Commc'ns*, 802 F.3d 516, 530 & n.54 (3d Cir. 2015) (prohibiting non-lawyers from conducting "first level review of privilege").

To be sure, there is one lawyer assigned to the proposed Filter Team— "an AUSA in the Asheville Office." (Dkt. 9 at 10.) But assigning privilege determinations to another prosecutor *in the Western District* hardly alleviates concern. As the Fourth Circuit has noted, a filter-team member "possesses a conflicting interest in [preserving privilege] and pursuing the investigation," and "some filter[-]team attorneys will make mistakes or violate their ethical obligations." *Search Warrant*, 942 F.3d at 177. Those conflicts are heightened when a filter-team attorney works within the same U.S. Attorney's Office as the prosecutors leading the case.

**C. The Filter Protocol does not adequately protect privileged communications or work product.**

Although the Government suggests that its review will be "limited" in scope, (Dkt. 9 at 14), in practice, the Filter Protocol would allow carte-blanche access to Defendant's devices.

9

As noted above, the Filter Protocol begins with a complete search "throughout each device," regardless of whether they are likely to contain privileged material. (*Id.* at 10, items 4(b)-(c).)

Indeed, the Government has identified only one subcategory of anticipated content—what it calls "Kik-related material"—that was likely used only for personal reasons. (*See id.*) Yet the Filter Protocol allows for complete reviews of "all devices," including of "all media" stored therein. (*Id.* at 10.) Defendant proffers that a search for "all media" would likely identify privileged communications and work product, including screen shots of text messages. And the Government's review would also cover, without limitation, all "applications installed on the devices." (*Id.*)

In short, the Filter Protocol provides for unbounded searches of the devices and, as a result, is unlikely to adequately protect privileged material from revelation.

### D. The Filter Protocol pits the Fifth and Sixth Amendments against one another.

Last, the Filter Protocol puts Defendant "between the proverbial rock and a hard place" by asking him to provide "search terms" to the Filter Team. *Search Warrants*, 111 F.4th at 329 (Quattlebaum, J. concurring).

Under the Protocol, the Filter Team will "implement . . . search terms," agreed upon by the parties, in an effort to filter its reports and "exclude"

privileged materials. (Dkt. 9 at 10-11.) Although this process portends to be for Defendant's benefit, in practice it "puts him in a lose/lose situation." *Search Warrants*, 111 F.4th at 329 (Quattlebaum, J. concurring).

If Defendant provides search terms, he risks "furnish[ing] a link in the chain of evidence needed to prosecute [him]"—that is, precisely what the Fifth Amendment guards against.[3] *United States v. Hubbell*, 530 U.S. 27, 28 (2000). But if he abstains, he risks forfeiting the attorney-client and work-product protections discussed above, which emanate from the Sixth Amendment. *See Search Warrant*, 942 F.3d at 174.

In sum, "either way [Defendant] turns, the protocol tramples his rights." *Search Warrants*, 111 F.4th at 327.

## III. A special master would appropriately balance privilege concerns and investigatory interests.

In lieu of the proposed Filter Protocol, Defendant requests the appointment of a special master to make threshold privilege determinations in this case. Undersigned counsel has spoken with representatives of the Firm who have stated it is their position, "cooperate with the court while fully protecting the interests of its clients. As for the scope and implementation of the filter protocol, the law firm will defer to the court's

---

[3] Moreover, accurate search terms "may themselves reveal some or all of the privileged information." *Id.*

11

judgment, with the understanding the protocol used will limit the review and disclosure of privileged and confidential data belonging to the law firm's clients".

It is within this Court's power and prerogative to appoint a special master to conduct privilege reviews. *See Search Warrant*, 942 F.3d at 181 ("[W]e are satisfied that the magistrate judge (or an appointed special master)—rather than the Filter Team—must perform the privilege review of the seized materials.")[4] And the use of a special master is especially prudent when to-be-reviewed materials were seized from a law firm or its employees. *See United States v. Stewart*, No. 02-CR-396-JGK, 2002 WL 1300059, at *6 (S.D.N.Y. June 11, 2002) ("[Some] courts that have allowed for review by a government privilege team have opined, in retrospect, that the use of other methods of review"—like a special master—"would have been better[.]")

As discussed, there is a substantial likelihood that the devices at issue here contain privileged materials—including some that are not easily discernable as such, and for which the privilege belongs to persons or entities *not involved in this case*. A special master would "vindicate both the

---

[4] See also *United States v. Gallego*, No. CR-18-01537-001-TUV-RM (BPV), 2018 WL 4257967, at *1-*4 (D. Ariz. Sept. 6, 2018) (ordering appointment of special master to review materials seized from law office for privilege); *Cohen v. United States*, No. 1:18-mj-03161, ECF No. 30 (S.D.N.Y. April 27, 2018) (appointing special master to review documents seized from lawyer).

interests of the government in investigating and prosecuting crimes and the confidentiality interests of the [Defendant, The Firm, and non-parties],"  *Klitzman*, 744 F.2d at 962, and do so with neutrality.  *See Search Warrant*, 942 F.3d at 159 n.19 (special masters are "*neutral* arbiters that have no stake in the outcome of the privilege decisions").

## Conclusion

For the foregoing reasons, the Government's Motion for Filter Protocol (Dkt. 9) should be denied.  Defendant submits that, instead, a special master should be appointed to review the devices for privileged material.

Submitted November 10, 2025:

                                                    s/Rob Heroy
                                                    W. Rob Heroy
                                                    GOODMAN CARR, PLLC
                                                    301 S. McDowell St., # 602
                                                    Charlotte, NC 28211
                                                    (704) 372-2770
                                                    rheroy@goodmancarr.net

                                                    s/Melissa Owen
                                                    C. Melissa Owen
                                                    TIN FULTON WALKER & OWEN, PLLC
                                                    301 East Park Ave.
                                                    Charlotte, NC 28203
                                                    (704) 338-1312
                                                    cmowen@tinfulton.com

                                                    *Counsel for Defendant*